Edwin SIMMONS, Appellant,

v.

Jacques GALIN, a/k/a Jack Galin; Rosita Conroy, individually; Jacques Galin, a/k/a Jack Galin; Rosita Conroy, husband and wife; Maria Conroy; Mellon Bank Corporation; Mellon Bank NA.

No. 02–1511.

United States Court of Appeals, Third Circuit.

Argued Nov. 7, 2002.

Decided Dec. 5, 2002.

Stephen J. Fendler (argued), Fendler & Associates, Kingston, PA, for Appellant.

Elizabeth C. Bailey, James D. Golkow (argued), Cozen & O'Connor, the Atrium, Philadelphia, PA, for Appellees.

Before MCKEE and GREENBERG, Circuit Judges, and LIFLAND, District Judge.*

OPINION OF THE COURT

GREENBERG, Circuit Judge.

Edwin Simmons appeals from an order for summary judgment entered on September 10, 2001, in favor of defendants-appellees Mellon Bank Corporation and Mellon Bank, N.A. (together called "Mellon"). The district court set forth the germane facts in its opinion granting summary judgment and inasmuch as we write only for the benefit of the parties we will not repeat them. It is sufficient to note that Simmons brought this action against Mellon by reason of being shot and wounded by Jacques Galin while attempting to repossess on behalf of Mellon a car owned by Rosita Conroy. Simmons argues that Mellon is liable because it received a check

* Honorable John C. Lifland, Senior Judge of the United States District Court for the Dis-

trict of New Jersey, sitting by designation.

from Maria Conroy paying off the car loan before he attempted to repossess the car but breached its duty to him to cancel the repossession order. He contends that Mellon should have canceled the repossession order because he was at risk of being assaulted if he attempted to repossess a car by reason of a supposed default on a loan when the default actually had been cured.

The district court found that "[a]lthough the date Mellon received the check [i.e., before or after the attempted repossession] may be a 'genuine' issue of fact, it is not a fact that is 'material' to [Simmons'] negligence claim because ... Mellon [did] not owe a duty of care to [Simmons] under these circumstances." In reaching its result the district court followed the opinion of the Pennsylvania Superior Court in *Elbasher v. Simco Sales Service of Pennsylvania*, 441 Pa.Super. 397, 657 A.2d 983 (Pa.Super.Ct.1995), which held that an ice cream manufacturer that had leased an ice cream truck to an independent contractor did not owe a duty to the contractor to protect him from criminal acts of third parties committed along his preassigned route. Simmons has appealed from the order entered.

The district court had jurisdiction in this diversity of citizenship action under 28 U.S.C. § 1332(a)(1) and we have jurisdiction under 28 U.S.C. § 1291. We exercise plenary review of this appeal and therefore will affirm if we conclude that there is no dispute as to any material fact and Mellon is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c).

We will affirm but not for the reasons stated by the district court. Indeed, it is possible that Pennsylvania law, which the parties treat as applicable here, would have imposed a duty on Mellon to notify Simmons or his employer of the receipt of the check from Conroy if it had received it

before Simmons attempted to repossess the car. Moreover, the situation in *Elbasher* was distinguishable from that here as it would be one thing to impose a generalized duty of protection on a party sending another person into a potentially dangerous situation but quite another to place the easily discharged duty to notify a party not to proceed with an unnecessary task in a dangerous circumstance. Moreover, Mellon should not be absolved from liability merely because criminal acts of a third party directly caused Simmons' injury. *See Liberty Nat'l Life Ins. Co. v. Weldon*, 267 Ala. 171, 100 So.2d 696 (Ala. 1957).

Nevertheless we are satisfied that on the record before us we must affirm as we are convinced that there is no basis for Simmons to dispute Mellon's claim that it did not receive the check from Maria Conroy before the attempted repossession in the early morning hours of October 4, 1995. It is, of course, settled that we "may affirm a judgment on any ground apparent from the record, even if the district court did not reach it." *Kabakjian v. United States*, 267 F.3d 208, 213 (3d Cir. 2001). We realize that Conroy testified that she mailed the check in Wildwood, New Jersey, on September 28 or 29, 1995, and that the check had a date on it of October 3, 1995, stamped by Mellon. In these circumstances if there was no other evidence with regard to the time when Mellon received the check we hardly could grant it summary judgment on a theory that it received it after Galin shot Simmons.

There is, however, other evidence on the point that we regard as conclusive. First, Christopher A. Bartos, a Mellon vice president explained that the check in fact was received on October 5, 1995, and that the October 3, 1995 date was on the check because a Mellon machine operator inad-

vertently had set the processing machine for October 3, 1995. Both the check and the envelope in which it was received also have the date of October 5, 1995, imprinted by Mellon to reflect the date on which they were received. Thus, he indicated that "when the Conroy check was processed by the machine, it was endorsed with an erroneous date."

Nevertheless we would not hold that the Bartos affidavit in itself negated the possibility that there is a dispute of material fact here regarding when Mellon received the check and beyond doubt established that Mellon received the check on October 5, 2002. There is, however, conclusive support for Mellon's position that it received the check on October 5, 1995. Anthony J. Andrioli, Manager of Distribution Operations at the Postal Service Processing and Distribution Center in Bellmawr, New Jersey, examined the envelope in which the check had been delivered to Mellon. He indicated that the October 4, 1995 cancellation stamp on it was authentic and that the envelope would have been delivered to Bellmawr no earlier than 3:30 p.m. on October 4. Thus, it would have been impossible for the check to have been delivered to Mellon before the shooting. Andrioli also said that the delivery schedule for the envelope was "absolutely" consistent with Mellon's contention that it received the check on October 5, 1995. Simmons offers no evidence disputing Andrioli's testimony.

In view of Andrioli's testimony the issue before us is not complicated. The question is whether Conroy's testimony as to when she mailed the check provides a sufficient basis to controvert the written record of when the envelope was processed when that record is explained by a disinterested postal manager. We answer that question in the negative. Consequently, the district court was correct in its decision to grant summary judgment.

For the foregoing reasons the order of September 10, 2001, will be affirmed.